duties as such until the following October; that his compensation for such services so performed at the rate fixed by the board amounted to $966.66, no part of which has been paid.    The presumption is that plaintiff voted for the resolution fixing the salary, for the minutes state 'that he was present, and that it was unanimously passed.    If plaintiff had not voted, the result would have been the same.    The vote cast by him did not render the proceedings void, but merely voidable at the instance of the corporation, its directors, stockholders, or creditors, if any wrong or injustice had been done them or either of them; and until some act of theirs indicates such a purpose, it is not a nullity.    The plaintiff, with the full knowledge of the corporation, was permitted for six months to perform the services necessary to manage the business of the ferry company, and sues, not for damages for wrongful discharge, but for the fixed salary of $166 per month for services actually performed, and the benefit of which the corporation has already received and adopted.    Judge Gray, in writing in Barr v. Railroad Co., 125 N. Y. 275, 26 N. E. 145, says:

"The rule does not operate to avoid ab initio all transactions of a trustee where he is interested, but is generally limited in its operations to rendering them voidable at the election of the party whose interests are concerned in the question of their affirmance or disaffirmance. If, therefore, nothing is done in voidance, the transaction remains. If knowledge and opportunity concur whereupon to move, delay, if unreasonable, or attended by retention and enjoyment of the results of the transaction, may be deemed equivalent to an adoption and ratification of that which before was the subject for action, in repudiation of any obligation."

The defendant did not, by proof or pleading, offer to show that the services rendered by plaintiff as president and manager of this ferry company were not meritorious and beneficial, and absolutely necessary for the conduct of the business of the company, or that the compensation therefor of $166 per month was in excess of the reasonable value of such services so rendered.    The contract set forth in the complaint was valid on its face, and defendant cannot, under a general denial, show that it was illegal.    However, defendant made no effort to show that the contract was fraudulent, unfair, or improvident; but, relying upon its motion to dismiss on plaintiff's proof, defendant rested, without introducing any evidence, and made no request to go to the jury.

Judgment and order affirmed, with costs.    All concur.

---

(17 Misc. Rep. 288)

### KRAUSS et al. v. J. H. MOHLMAN CO.

(City Court of New York, General Term.    June 30, 1896.)

AGENT—RATIFICATION OF ACTS.
    Where defendant in an action for the price of goods delivered to it by plaintiff pursuant to an order from one of defendant's employés denied the authority of such employé to give the order, and it appeared that the goods were received at defendant's place of business by another employé of defendant, and placed in its stock, where they remained for 40 days before any complaint was made as to the regularity of the order, and the goods

were mentioned in lists issued by defendant, describing the goods it had for sale, the court properly submitted to the jury the question of the ratification of the purchase.

Appeal from trial term.

Action by Joseph Krauss and another against the J. H. Mohlman Company. From a judgment entered on a verdict in favor of plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before CONLAN and O'DWYER, JJ.

Louis Cohn, for appellant.

Einstien & Townsend, for respondents.

CONLAN, J. This is an appeal from a judgment entered upon the verdict of a jury, and from an order denying a motion for a new trial. The action is brought to recover the contract price for 10,000 cigars claimed to have been purchased by the defendant from the plaintiffs, 5,000 of which are claimed to have been delivered on September 14, 1893, and the plaintiffs have at all times since offered to deliver the remaining 5,000, according to the testimony of one Brintzinghoffer, a former employé of the defendant in its cigar department, and a witness for the plaintiffs. He gave the order for the cigars to one Steindler, a salesman for the plaintiffs, who brought it to their factory; and the order was entered on plaintiffs' books on August 29, 1893, as appears by the evidence of Lewin, one of the plaintiffs. It is proper to state that the defendant denies the authority of its employé Brintzinghoffer to order any cigars, and an affidavit of Brintzinghoffer was put in evidence by the defendant, wherein the affiant is made to swear that he did not give the order, and had no authority so to do; but it appears that Brintzinghoffer and one Kothe, the latter of whom is conceded by the defendant to have been the manager of its cigar department down to 1st of September, 1893, had visited the plaintiffs' factory in July or August previous, in company with Steindler, the plaintiffs' salesman, and had been shown through the cigar department, and that they were introduced to the plaintiffs by Steindler, and discussed with him the question of making a brand of cigars similar in style and make-up to a brand called "Leonora," and of which Brintzinghoffer said he had sold large quantities to his customers when employed by a former house in the business, and that the name "Leonarda" was suggested as the name of a cigar, the manufacture of which was the subject of the discussion among them at that time. A sample box of the Leonarda brand was subsequently sent to the plaintiffs, and the 10,000 cigars in question were made and boxed after this pattern, in pursuance of the order which it is claimed had been given on the 29th day of August. The plaintiffs state that they made these cigars specially to fill this order, and that they never made any after this pattern for any one else. Brintzinghoffer says of his affidavit that, when it was presented for his signature, his attention was not called to the statements therein contained, in that he had no authority and did not give the order, and sustains it by saying that the affidavit was not prepared in detail when he called at

the office of the defendant's counsel on the first day, and he called again the next day, and signed the paper handed to him, and was shown before a notary public, who swore him to its contents, and that his attention was not called by any one to the statements above referred to as the amount of authority, and his not giving the order.

There appears from the record much conflict of evidence upon the question as to whether or not the order in question was given by a person having full authority therefor; but we do not think that we are called upon to decide this case on this very narrow ground. The affidavit was put in evidence, and, together with the contradictory evidence of the affiant on the witness stand, was submitted to the jury. The evidence in chief of all the witnesses for the plaintiffs and defendant is conflicting upon this identical question as to whether the order was given or not by one having authority, but we are not confined to this branch of the case for a solution of the problem presented by this appeal. The delivery of the first 5,000 in accordance with the order given is not disputed. They were taken to the defendant's place of business on the 14th day of September, 1893, received and receipted for by one of the employés, and placed in stock in the defendant's cigar department, and so remained until the 24th day of October following, a period of 40 days, before any complaint was received by the plaintiffs touching the regularity of the order; and the defendant claims that it undertook to return the cigars, and to free itself from the obligation to pay the purchase price. The return was refused by the plaintiffs, on the ground stated already, and the defendant was called upon to receive the remaining 5,000, which were then being held by plaintiffs for them, pursuant to the verbal and written orders of Brintzinghoffer. These written instructions were on the printed letter heads of the defendant; and in one of them, dated September 11, 1893 (Plaintiffs' Exhibit D), Brintzinghoffer writes: "Do not send us more than 5 M Leonarda. Keep the other 5 M at your factory. I am cramped for room,"—and inclosed a copy of the defendant's cigar list. This cigar list (Plaintiffs' Exhibit E) also contained this reference to the brand of the cigars in question: "One Leonarda cigar is made of long booked Havana filler and prime Sumatra wrapper. This cigar is packed one bundle in a red box. It is Reine Victoria size cigar; a very fine long smoke. Price, $58 per thousand." It may be noted here that the price of this cigar to the defendant was $43.50. The witness Schmidt, the defendant's president, says of this cigar list: "We had a cigar list only in our regular paper that we sent out (our prices current), that contain all our goods. Outside of that, salesmen take the privilege to make up lists, and send to their customers; and I give them the privilege to pick out certain goods, and make out lists, and send them to their customers. These are not always submitted to me. It is not the rule of our business, nor hardly in any other wholesale grocery business." This cigar list purports to be sent out by the J. H. Mohlman Company. It will be seen that Plaintiffs' Exhibit 1 (page 22) calls the attention of the defendant at that date to the delivery of the first 5,000 cigars, as

follows: "5,000 of the above order delivered by Truckman Uhlman, and 5,000 we hold subject to your order,"—which is in entire harmony with the statement in Plaintiffs' Exhibit D, above noted and referred to. Of Exhibit 1, the witness Fitzsimons, the defendant's assistant treasurer, says: "I cannot say whether we ever received that paper. I have seen one like it, and we received one like it."

Disregarding entirely, then, the evidence upon which there is a conflict, and leaving out of view the statements of the witness Brintzinghoffer, both oral and in his sworn affidavit, we have the uncontradicted evidence that 5,000 of these cigars were received and receipted for by some person in the defendant's employ, authorized for that purpose; that they were placed in stock; that they were included in the cigar list issued by the defendant, and sent out to its customers; that it was duly notified of the delivery, and of the balance remaining to its order; and that it retained these very cigars for a period of 40 days, without any word being sent to the plaintiffs by way of complaint or protest of any kind. And we think the trial court properly submitted to the jury the question of ratification of the sale, in the following language of the charge: "If you should find that these cigars were ordered by any person who was authorized by the defendant company, or that the sale was ratified by any person who had authority to ratify the sale, you must find for the plaintiffs."

The learned counsel for the defendant invites us, in the ninth point of his very elaborate brief, to a close scrutiny of the evidence in this case, and says: "Appellate tribunals cannot abdicate their functions. The law has clothed them with the power of review, and it should be exercised with freedom;" and, because of this, as he says, "jurors take no notice of testimony." We have carefully weighed and considered the evidence in the case, and are unable to find therein any sufficient reason for disturbing the finding of the jury.

We are called upon to construe the statute of frauds, in point 2 of appellant's brief, as applied to this case, but are inclined to the opinion that the case at bar was removed from the operation of this statute by the delivery and receipt of a portion of the goods in question.

We think the judgment should be affirmed; and the judgment is affirmed, with costs.